UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__2/1/2016___
```

-------------------------------------------------------------X
UTC ASSOCIATES INC.,                    :
                                        :
                          Plaintiff,    :
                                        :          15-CV-5795 (VEC)
                                        :
          -against-                     :          ORDER
                                        :
GLOWPOINT INC.,                         :
                                        :
                                        :
                          Defendant.    :
-------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

UTC Associates Inc. ("UTC") initiated this lawsuit against Glowpoint Inc. ("Glowpoint")

on July 23, 2015, alleging breach of contract, fraud and unjust enrichment arising out of their

now-terminated business relationship. Glowpoint moved to dismiss the original complaint, and

UTC filed an Amended Complaint, reiterating its breach of contract and fraud claims, but

abandoning its claim for unjust enrichment. Glowpoint now moves to dismiss the Amended

Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons

discussed below, Defendant's motion is DENIED as to the breach of contract claims and

GRANTED as to the fraud claim.

## BACKGROUND[1]

UTC is a "full cycle software development and network integration company." Am.

Compl. ¶ 7. In June 2010, it entered into a five year contract with Glowpoint pursuant to which

Glowpoint agreed to purchase at least $50,000 worth of UTC services per month and to use UTC

---

[1]       The facts are taken from the Amended Complaint, which must be assumed as true for purposes of deciding
the pending motion. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

services on an exclusive basis for the services UTC provided. *Id.* ¶¶ 8, 13. Glowpoint breached the contract by failing to purchase at least $50,000 in services monthly and by utilizing other companies which provided the same services as UTC. *Id.* ¶¶ 16-17.

According to UTC, on at least three occasions, the earliest one of which was in September 2013,[2] officials of Glowpoint gave UTC assurances that it was not using other companies for the services UTC provided and explained its failure to make the required minimum purchases by saying it was financially unable to do so. *Id.* ¶ 31.

At the end of the five year term, Glowpoint terminated the contract, *id.* ¶ 19, and this lawsuit followed.

## DISCUSSION

Defendant moves to dismiss the Amended Complaint in its entirety, arguing that UTC's breach of contract claims should be dismissed because UTC waived the breach, Def. Mem. at 9-13, and its fraud claim should be dismissed for a variety of reasons including because it is duplicative of the breach of contract claims, *id.* at 3-9.

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). A plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Courts must "'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *L.C. v. LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 398 (S.D.N.Y. 2013)

---

[2] In one paragraph, UTC alleges the misrepresentation occurred on September 10, 2013, Am. Compl. ¶ 31, but in a different paragraph UTC alleges it occurred on September 23, 2013, *id.* at ¶ 32.

(quoting *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)).

Furthermore, courts are generally confined to "the four corners of the complaint" and must "look

only to the allegations contained therein." *Perez v. Westchester Foreign Autos, Inc.*, No. 11-CV-

6091(ER), 2013 WL 749497, at *5 (S.D.N.Y. Feb. 28, 2013) (citing *Roth v. Jennings*, 489 F.3d

499, 509 (2d Cir. 2007)).

### I.    Defendant's Motion to Dismiss the Breach of Contract Claims on the Ground of Waiver is Denied

Glowpoint does not contest that the Amended Complaint adequately alleges breach of

contract arising from Defendant's failure to purchase the required monthly minimum dollar

amount of services and the Defendant's violation of the exclusivity provision of the contract.

Instead, Defendant asserts that the claims should be dismissed on the grounds of waiver.  Def.

Mem. at 9.

The parties agree that a breach of contract can be waived if the non-breaching party does

not object to the breach and continues to perform under the contract.  *Id.* at 10; Pl. Resp. at 3.  In

this case, Glowpoint asserts that UTC waived Glowpoint's breaches by continuing to perform

under the contract.  Def. Mem. at 12.  But it is not clear what, exactly, Glowpoint would have

expected UTC to do.  According to the Amended Complaint, UTC "brought Glowpoint's breach

of the Contract to Glowpoint's attention during the course of the Contract term."  Am. Compl. ¶

22.  Inasmuch as UTC was selling services to Glowpoint, it was in its interest to continue to

perform, even if Glowpoint was not purchasing the required minimum.

This case is, therefore, distinguishable from the case on which Glowpoint primarily

relies, *CDO Plus Master Fund Ltd. v. Wachovia Bank, N.A.*, No. 07 Civ. 11078 (LTS), 2009 WL

2033048 (S.D.N.Y. July 13, 2009).  In *CDO* the alleged breach of contract was that Wachovia

made demands for money from CDO as credit support for a credit default swap between the

3

parties.  CDO subsequently alleged that Wachovia's demand for additional funds breached the

contract.  "CDO acceded to the first seven . . . demands without protest . . ..   After complying

with the seventh . . . demand, CDO wrote to Wachovia and expressed concern about Wachovia's

. . . demand. . . . CDO thereafter acceded to seven more of Wachovia's Credit Support demands."

*Id*. at *2.  In the context of a motion for judgment on the pleadings, the court held that CDO had

waived its breach of contract claim "by complying with those demands fourteen times and

continuing to perform on the contract. . . . CDO could . . . have invoked the Dispute Resolution

provision without exposing itself to a technical default.  It did not do so."  *Id*. at *6-7.

     In contrast, UTC was not complying with demands from Glowpoint that it believed

breached the contract.  It was selling services, but Glowpoint was not buying the minimum

amount of services as specified under the contract.  Glowpoint has cited no case, and the court is

unaware of any, that holds a promisee waives a claim for breach of contract by giving notice of

the breach but then continuing to perform in the face of the promisor doing less than it is

contractually obligated to do.

     Similarly, Glowpoint cites no case that suggests a party waives an exclusivity provision

in a contract by giving notice of the breach but then continuing to perform in the face of evidence

that the other party to the contract may be violating the exclusivity provision.

     It may be that, with further development of the facts, evidence will emerge that undercuts

the truth of the allegation that Plaintiff gave Defendant notice of the breach of contract or that

supports the Defendant's argument that the Plaintiff intentionally relinquished its breach of

contract claim during the course of the contract.  Based on the allegations in the Amended

Complaint, however, the Court cannot make that determination in the context of a motion to

dismiss.  Accordingly, Defendant's motion to dismiss the breach of contract claims is denied.

**II.        Defendant's Motion to Dismiss Plaintiff's Fraud Claim is Granted**

Plaintiff has taken a routine breach of contract claim and tried to dress it up as a fraud

claim.  The Amended Complaint alleges that on three occasions Glowpoint

> made material misrepresentations and/or omissions of fact to UTC.  Such
> misrepresentations included statements [from Glowpoint executives on specific
> dates] that Glowpoint was not using and/or paying anyone else for the type of
> work that it was required to purchase from UTC and that it was not financially
> able to meet the guaranteed minimum amount set forth in the Contract.

Am. Compl. ¶ 31.  Plaintiff asserts that these representations were false and Glowpoint knew

them to be false, *id*. ¶ 34, and that UTC reasonably relied on the false representations to

"allocate[e] developers to Glowpoint who could not be developed [sic] elsewhere and dedicat[e]

time from UTC's recruiting team to find personnel."  *Id*. ¶ 35.

Glowpoint makes persuasive arguments that the allegations do not adequately allege

fraud.  Def. Mem. at 3-7.[3]  Whether the Amended Complaint adequately alleges fraud or not,

however, the claim must be dismissed because it is duplicative of the breach of contract claim.

To maintain a claim for fraud in the face of false statements that amount to no more than false

assurances of an intent to perform under the contract,

> [A] plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform
> under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or
> extraneous to the contract; or (iii) seek special damages that are caused by the
> misrepresentation and unrecoverable as contract damages.

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,* 98 F.3d 13, 20 (2d Cir. 1996)

(citations omitted).   In this case, UTC has not alleged that Glowpoint owed it any legal duty

---

[3]        Specifically, Defendant argues that UTC has not adequately alleged: how the alleged misrepresentations
were fraudulent, Def. Mem. at 4; an intent to defraud, *id*. at 4-5; reliance, *id*. at 5-6; or damages, *id*. at 6-7.
Additionally, Defendant asserts that the alleged misstatement on February 20, 2014, was not alleged with
particularity.  *Id*. at 7.

other than its duty under the contract; UTC has not alleged any false statements that were collateral or extraneous to the contract; and UTC has not alleged special damages.[4]

UTC argues that "[u]nder the liberal pleading standards applicable in federal court, the fact that a plaintiff's allegations do not support the particular legal theory advanced should not necessarily result in a dismissal; rather, the court must examine the complaint to determine whether there is any possible theory upon which relief could be granted." Pl. Resp. at 6. Plaintiff asserts that there are adequate factual allegations to make out a claim that the Defendant fraudulently induced Plaintiff into signing the contract. Putting aside the fact that "any possible theory" is not the correct standard to be applied when ruling on a motion to dismiss, and that a plaintiff is not permitted to change theories when responding to a motion to dismiss, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998), the Amended Complaint does not allege any facts that would support a fraudulent inducement claim. Most importantly, the earliest false statement alleged in the Amended Complaint is a statement by Peter Holtz, Glowpoint's Chief Executive Officer, on September 10, 2013,[5] three years *after* the contract had been entered into. It is axiomatic that a fraudulent inducement claim must be premised on false and fraudulent statements made *before* the contract was executed. *Federated Retail Holdings, Inc. v. Sanidown, Inc.*, No. 06 CIV. 6119 (LTS), 2009 WL 2394528, at *5 (S.D.N.Y. Aug. 5, 2009) ("Under New York law, in order to maintain a separate action for fraudulent inducement, the claimant must

---

[4]     In its response to the motion to dismiss, Plaintiff asserts that it is seeking damages other than contract damages because it priced its services differently than it would have had there been no minimum monthly purchase requirement. Pl. Resp. at 14. That is an interesting theory, but it is not alleged in the Amended Complaint. The only allegation that comes anywhere close is the allegation that its pricing was "extremely competitive" because of the promise of exclusivity and its monthly guarantee. Am. Compl. ¶ 15. Moreover, even if it had been alleged in the Amended Complaint, UTC's pricing decision was made years before the allegedly fraudulent statements, conclusively undercutting any causal connection between the alleged fraud and Plaintiff's alleged damages.

[5]     As noted in note 2, *supra*, this alleged false statement may have been made on September 23, 2013, but that would also be too late to have induced the Plaintiff to enter into the contract.

allege fraud . . .  occurring before the contract came into existence . . . .").  Because the contract at issue was executed in 2010, there are no factual allegations that would support a fraudulent inducement cause of action.

## CONCLUSION

For the foregoing reasons, Plaintiff's third cause of action for fraud is DISMISSED with prejudice because further amendment would be futile; the balance of Defendant's motion to dismiss is DENIED.

The parties are directed to meet and confer regarding a discovery schedule and to submit a joint letter to the Court proposing a discovery schedule by February 15, 2016.

The Clerk of Court is respectfully requested to close Docket Entry 27.

**SO ORDERED.**

**Date:  February 1, 2016**
     **New York, New York**
                                     **VALERIE CAPRONI**
                                     **United States District Judge**